Good morning, Your Honors. I'm James Nielsen, Counsel for the Appellants, Armory Studios, LLC. I'd like to reserve five minutes for rebuttal. Your Honors, I've been a partner in different companies for over 30 years, and in that capacity I have personally negotiated and signed commercial leases for my colleagues. And once we've signed those leases, we occupied our space and we did things that lawyers do. I write a lot of legal briefs, as do my... Counsel, if I may interrupt you, if you can, you're going in and out a little bit, if you can speak a little bit louder, it would help us. Thank you. I write a lot of legal briefs in my offices that I've rented, and I would have to say that it would be an unusual thing to say that any one of those commercial landlords who rented space from us, for us, all those many years caused me to write a brief, or to take a deposition, or to do legal research. Those are the things that we as commercial tenants in our space did as part of our normal business. The same would be true when a landlord, a commercial landlord leases space to a printing company, the landlord does not cause the printing company to print brochures and flyers and so forth. It is an incidental. I mention this because the nature of the business that went on in my clients' premises was a little more off-putting than law or manufacturing or printing or other events. The people who rented the space engaged in production of pornographic materials. Now, they did so in accordance with all state and local regulations. They paid their taxes, and I suppose their money was as good as anybody else's. Well, they didn't comply with the public safety provisions, did they, counsel, with regard to the use of condoms and other protective measures to reclaim it? Well, the allegation against them, your honor, was that as a landlord, they had a duty. If you look at the ninth or the premises liability causes of action in each of the tendered complaints, the allegation was they had a duty to inspect to make sure that their commercial tenant did what your honor just described. So, that was obviously hotly disputed. The case is ultimately settled. We're now after that litigation, and we're talking about what had happened. It would be an unusual thing for most commercial landlords to have a duty to go in and inspect exactly how it is their commercial tenants perform their businesses, whether they're conventional or, in this case, unconventional business. But that was the theory that was raised, that they should have done that. And it was large lawsuits. The nature of the damages claimed were very substantial. The plaintiffs claimed that they contracted the human immunodeficiency virus in the course of their business activities, such as they are. And that's really that issue of the connection between what the landlord did and was supposed to do and was alleged to have done. And the single exclusion that is at issue in this case is what's at issue. We have two levels of causation in this. Counsel, what do we do with the fact that Mr. Aceworth was both the owner of the premises and directly involved, according to the allegations of the complaint, in the production of these videos? Well, I mean, it was, again, that was a disputed fact in the case. So, what your honor should do with it is to look at the allegations most favorably to the policyholder and look at the duties that are alleged as to inspection. If he, in fact, was directing these sexual acts which caused injury and ordering the actors not to use protective measures, why doesn't that directly fall into the exclusion under the policy of sexual acts caused by the insurer? It might, for purposes of indemnity, your honor. But we're here talking about the duty to defend. And here's the key thing, your honor. The evidence is undisputed that from the declaration of Mr. Meagher that the Armory Studios itself had no employees on site. There's no evidence that Mr. Meagher... Wasn't Mr. Aceworth an employee of Armory? Wasn't he the COO or CEO? He was an officer of the company, yes. Okay. So, he was on the premise. Yeah. Well, we don't know that he was on the premises. That's my point. The company has over 100 employees and he was not. These are... What he was was a... Strackworth is a financial man. He's not sitting there... He's accused of being a director of the movies. That's how I read the underlying complaint. I don't believe that's accurate. And if he was... There were allegations that he directed the performers not to use condoms because that reduces the marketability of these videos. Yeah. Two points, your honor. One, he disputes that. So, there's that point. And all these allegations were hotly disputed. Number two... Excuse me, your honor. Number two, we're talking three plaintiffs talking multiple events over a series of years in a company that had over 100 employees on site doing the things that they do. To say that Mr. Aceworth who, as I understand it, was involved in running the company and who knows, perhaps he was involved in certain of the shoots himself. There's no clear evidence of that. It would have been from time to time. It's certainly... There's certainly plenty of other directors listed in the complaints as having undertaken things. In fact, a lot of the allegations are that they didn't keep track of what their actual directors were doing. If I recall the complaints, that there were some directors who in the heat of the moments, such as it were, let things get out of hand in their peculiar productions. And that was one of the theories of... Mr. Aceworth is an officer or employee of any of these 30 some odd websites that produce these videos? I have no idea, your honor. All I know is what's in the record. I'm not Mr. Aceworth. There's nothing in the record that answers that question. I'm not aware of anything in the record that answers that question. Okay. So, I mean, it's... Nor is there any particular evidence that there is an identity between the commercial landlord and the commercial tenant. The allegations are that Mr. Aceworth was an officer of both. That's the... Wonder, is there a question? Can you hear me? Yes, I can, your honor. You can now? You can, yes. Or not. Okay, I have a question. If you prevail on this first issue, what happens to the case? Do you get reimbursed for the amount that you had to pay the insurance company? A couple of things happen, your honor. Number one, we get to... Our judgment against my client of $350,000 is relieved. Secondly, we will have some additional costs that we will ask the insurance company to reimburse. Okay. You don't have to have another trial or hearing on this. You just get reimbursed for the $350,000 plus cost, right? I believe that's correct, your honor, essentially. I don't know. But getting back to Judge Tallman's questions, I think it's important. It's important to recognize that in order for the duty to defend to be defeated by this exclusion, the hypotheticals and the questions your honor was posing would have to apply for every injury in every case over all the years. There's a lot of allegations here. So the exclusion would only apply, as has often been quoted in the Atlantic Mutual versus J. Lamb Inc. case, it has to apply in all possible worlds. And Lord knows there are a lot of possible worlds in this case. Well, there are a lot of sexual acts, clearly. But it seems that the exclusion that Attain wrote into its policy was intended to cover the entire universe of the production of videos of sexual acts that caused the injury to the insured. And I'm having a hard time understanding what isn't covered under that exclusion based on the conduct of these entities that Mr. Aceworth created or leased to or participated in. I'm not sure which it is. Your honor, those are not insurance. None of those are insured entities. They had separate insurance. Other insurers defended them in these litigations. We're only talking the commercial landlord here. It's a commercial policy that covers armory against slip and falls and injuries that are not sexual acts related, as I understand the policy. Isn't it just a standards policy? The only reason this policy should not cover armory is if armory itself caused, directed, or instigated sexual acts, and nothing that armory did caused, directed, or instigated sexual acts. Certainly not in all cases. I mean, your honor was positing that maybe Mr. Acworth was involved in a direction somewhere in the many, many shoots that were involved in the allegations in these complaints. But by and large, in the main, it was a commercial landlord just like any other commercial landlord. But we're not commercial landlords like every situation here. I mean, typical context, a landlord owns a building and leases something to a business. They may not know what's going on here. But according to the complaint, Mr. Acworth owns both armory and is involved in the adult film production. And he bought the armory building for the express purpose of shooting this adult films. I don't know. I don't think this is your typical commercial landlord versus tenant situation. Well, the only thing that renders it similar, your honor, is if I were to buy my own building and lease it to my law firm, it would be similar to that. But still, I would have insurance as a commercial landlord that if I committed a malpractice, but would cover me for anything I got sued on short of that. In this case, again, the allegation that we have to focus on for purposes of the duty to defend is whether the commercial landlord had a duty. And I don't know who all the ownership interests are in these things. I know Mr. Acworth is involved in both companies, but I'm sure there are plenty of interests involved in both. When you say both companies, is the second entity Kink.com, is that the other entity we're talking about? I believe it's called Cybernet Entertainment. Kink.com is one of its various fictitious business names, which is not insured here, and its conduct is not an issue here. Although it was the primary focus of the litigation, and it was separately insured by other companies. What we're talking about here is solely armory, its interests, and its duty to inspect the premises, to see if a tenant was doing something. I realize there's overlapping ownership, but that is not one of the worlds that we have to look at for purposes of considering the duty to defend. So I'd like to reserve my last minute and a half, if I may. Thank you. Good morning, your honors. My name is Gail Stargardner, and I represent a teen specialty insurance company. The problem with Armory's argument is that the duty to defend is determined based on the allegations in the complaint. And in this instance, the court is correct. The complaint alleges that Peter Ackworth, in his capacity as the owner of Armory Studios, or as a member of Armory Studios, in his capacity as a member of Cybernet, and in his capacity as a member of Kink Studios, directed these actors to participate in sexual acts with untested members of the general public, and in so doing, caused them to contract HIV. Alternatively, the complaint alleges that Peter Ackworth and Armory Studios, in their capacities as landlords who had specific knowledge of the practices of Cybernet, failed to take steps to prevent their tenant from placing the actors in a precarious position while engaging in sexual acts. Whether those allegations are true for purposes of determining the duty to defend is not in question. The question is whether, if those allegations are proven true, those claims fall within the scope of coverage. And here, because of the sexual acts exclusions, they don't for two reasons. One, the complaint alleges that Attains Insurance directed the practice of engaging in unprotected sex acts, or by their omissions, allowed these actors to participate in unprotected sex acts, both of which are clearly and unambiguously excluded by the policy. Assume that the omission regarding the direction of the landlord applies here. Do you still have to show that there is an exclusion under the omission clause as well for the omission theory? We have to prove that either the acts are excluded either because they were directed by the landlord or because some omission on the part of the landlord. We don't have to prove it. What we have to prove is that that's what the complaint alleges, and if those allegations are proven true, that their coverage would be excluded. And we've met that burden because the exclusion has four separate categories. It's caused by, instigated by, directed by, or through an omission by. So your position is if you qualify under the direction clause, you don't have to show anything else? It's excluded? I think, I think to properly answer your question, if I'm understanding it correctly, your honor, and I apologize if I'm not, if we, I think that because the complaint alleges both that Armory Studios directed the conduct or through their omissions allowed the conduct to occur, the exclusion applies. So I believe that ATTAIN has met both aspects of the exclusion, and the exclusion applies across the board under these facts, under the particular facts of the case and the allegations in the complaint. Counsel, can I turn to your cross-complaint? Is it, is it possible for ATTAIN to meet its Blue Ridge obligations and prove up consent by the insured to the settlement, if all of that evidence is precluded by the California Evidence Code? If it's precluded by the California Evidence Code, I think the conduct of the parties' evidence is consent. But the problem with the mediation privilege is that Armory waived it, and I also waived it. And because both parties waived it, it's waived, and to not allow that evidence in under these facts would be sort of an untoward result. And how did they, excuse me? What is your best case for that? I cited it in my papers, and I'm really sorry, I can't recall it off hand, but there is a case right on point from the Ninth Circuit that says if not allowing waiver, if one side waives a privilege and you can't use it as a sword in the shield, and you can't enforce it to create a fault. And I'm really sorry, I'm just blanking out right now on what that case is. But the fact of the matter is that Armory Studios are the ones who said that they were at the mediation, and they never say, they go into detail about what happened at the mediation. They never, in that declaration, never did they say that they did not consent to the settlement. What they say is that I didn't tell them that because they didn't consent, they had a right to assume their own defense. And that's correct, I didn't tell them that. And the reason I didn't tell them that is because they said, go ahead and settle the case, we want you to settle at this amount, we think it's a good settlement. Well, did your initial reservation of rights letter inform them that if at any point you came to a party of the way, they would have the defense of the suit? Well, our reservation of rights letter said is that we were reserving the right to seek reimbursement of amounts paid in settlement. We tell them if we were going to settle and if they disagreed with that settlement, they could tell us and they could assume their own defense. That is correct. So the answer to my question is yes. Yes, we told them that. Right? Yes, Your Honor. Sorry. All right. I'm still a little bit puzzled by your statement that there's a waiver here. Is your argument that it's a waiver because they brought suit for coverage under the policy? Is that the basis for waiver? It sounds like you're arguing like in a medical malpractice case where the patient sues the doctor, the patient impliedly records in order for the doctor to defend himself against the malpractice. What's the basis of the waiver counsel? The basis of their waiver is that in we disagreed on the amount we disagreed as to whether or not attain had met the Blue Ridge factors. And the court ordered briefing on that issue. Armory went first. And in their briefing, they submitted a declaration by the insurance personal counsel in which she attested to what went on during the mediation. By so doing, my belief is she waived, she affirmatively waived the mediation privilege by testifying what went on at the mediation. Did you argue that in your brief? I don't remember seeing it. Yes, I did. Okay. All right. And when she waived it, I also waived it by responding to what she said. So that's the basis for my position that to the extent they raised what went on during the mediation, my communication to her, do you want us to pay this amount? Is that do you believe it's a good settlement? And she says, yes, that's consent. What do we do with the language? I think it's from the California Supreme Court that basically says this is a really tough evidentiary privilege, but there is no exception for follow on civil litigation. In order to the confidentiality of the mediation process, we will not permit any statements made during the mediation to be introduced in litigate and make a harsh rule. But the policy behind it is to encourage frank and open discussions during the mediation. Policy behind it is to encourage frank discussions during mediation. But this is a communication about whether the parties want the insured to pay an amount. It has nothing to do with the actual settlement of the underlying case. And in this instance, the rule is not so limited counsel. The rule basically says any statements made during the mediation are covered by the evidence code. And you're trying to suggest that Armory can now introduce or can now introduce statements by Armory's counsel made during the mediation, which I think is covered by the express language of the evidence code. But we're allowed if both parties agree to waive the mediation privilege, it's waived and you can't allow one party to use it both as a sword and a shield. And in this instance, Armory waived it. Excuse me, your honor. What did they do? What did they do to waive this? They submitted a declaration by the insured's personal counsel who is in attendance at the mediation. That's a waiver of the privilege. To put it into evidence. That it can be waived under those circumstances. My understanding is that if one side waives and the other side waives, there's a waiver. And then to allow the other party to say, well, you can't rely on that is using the privilege both as a sword and a shield. And what the case law says is you can't use the privilege such a manner as to create an absurd result. And what I'm saying is that under these particular facts, where Armory put this information into evidence themselves and now is saying, oh, no, no, it's protected by privilege. That would result in an absurd result. Because they're the ones who raised the issue in the first place. Did the district court find a waiver here? I don't believe they did. No, sir, they did not. Is your argument based on waiver or absurd results? I think it's based on both. I think we waived it because both sides agreed to waive it. I think it's also because it's an absurd result if you allow Armory to raise these arguments, but then allow them to prevent a team from making the same argument based on a privilege that they themselves waived. With respect to the third Blue Ridge factor, I know there's a dispute whether that's conditional or required in the beginning. If it's just assumed that it's required at the beginning, it's not conditional that you have to make that offer to assume they can assume their own defense. We make that assumption that the third Blue Ridge requirement is not conditional. Can you still prevail on that issue of reimbursement? I think the answer to that question is under Blue Ridge itself, it says we're only required to inform the insurer that they have the right to assume their defense when they disagree that the case should be settled. I'm saying for purposes of the question, assume that you had to make that offer for them to assume their own defense. It isn't conditional on disagreement. Assuming that's the rule, would you still prevail? No, Your Honor. If the rule is different from what is set forth in Blue Ridge, if I'm required to also notify them, okay, you've consented to the settlement, but just in case you decide you don't want to consent to the settlement now, you have the right to assume your own defense, I would not have met that requirement, but I disagree that that is a requirement. Anyone else has any questions? Thank you. Thank you, Your Honor. Mr. Nielsen, I'll give you three minutes, a lot of extra time for your rebuttal. Thank you, Your Honor. I'm gracious of you. In Ms. Smallgarter's presentation, you conceded the basic facts that we need to prevail on the main appeal in this matter. You described the allegations, the underlying complaints as alleging that Peter Ackworth was a member of the LLC, which is the landlord, and he was also a member of the LLC, which was the tenant, Armory and Cybernet was collectively, and then she said, and it was alternatively alleged that the landlord had a duty to inspect with the tenant in safety procedures and so forth. That is the allegation we have focused on. That is the one that triggers the duty to defend. It does not have any causation between the landlord and the sexual conduct that's alleged in the complaints, and that is what ought to trigger a duty to defend in this setting. Because in all possible worlds, it may be that a detainee will be able to say, we're not going to pay for this damage or that damage because Mr. Ackworth was involved. Not too concerned about that, because I don't think Mr. Ackworth actually was involved in much or any of these. And only the damage or those events where he was not involved, which would be counsel. Counsel, it was my understanding that Plaintiff Adams alleged the filming actually occurred off-premises from the Armory. Is that right? Adams alleged both, I believe, Your Honor. I think there were instances where there were events alleged off-premises and events alleged on-premises. That's my understanding. I thought the filming that she says produced action was done at a different location in the Mission District where members of the public were invited in to participate without having any idea whether they might be carrying STDs. I know that she alleged something like that, Your Honor, but I don't think that's all alleged. And she did also specifically allege a premises liability claim against Armory for its duty to inspect the premises insured here, Your Honor. But you would agree, would you not, that Tain's policy would not cover other premises besides the Armory? That may be true, Your Honor. It's not an argument that anyone has raised, nor that we've all looked at. I'm not sure that the liability of the company is limited to a connection between this premises normally would not be. What's your response to her waiver argument? Oh, I don't think it was raised in the papers, for one thing. But the short answer is, Your Honor, that Tain's theory of reservation was that everything happened during a confidential mediation and they would adduce facts based on confidential mediation to satisfy the Blue Ridge and Fomian requirements. And so when we briefed it, the first thing we did was we objected to any such evidence and we conditionally presented counter evidence to show that what Ms. Stargardner was saying about what happened at the mediation was not accurate and that in any event, even if it were accepted in a court order to consider the evidence, it did not establish the various requirements of Blue Ridge, Fomian, and Fomian cases. The trial judge sustained the objection and said correctly, therefore it disregarded the evidence that was presented. You would agree that if a Tain cannot introduce evidence of what was said or done at the mediation based on privilege, there is no other way that a Tain can establish the three Blue Ridge requirements? Oh, that's correct, Your Honor. That's the first reason we objected. Okay. Thank you, Your Honors, and thank you for the extra time. Thank you. Case has been submitted. Thank you very much. This court for this session stands adjourned.
judges: Siler, Tallman, Lee